**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| MARIO D. ALLEN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 23-cv-16748 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| KEVIN TAYLOR, GABRIEL | ) | |
| RODRIGUEZ, DANIEL FAIR, JEFFREY | ) | |
| MORROW, UNKNOWN OFFICERS, | ) | |
| and CITY OF CHICAGO, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Mario Allen drove around town before the Fourth of July, and wound up in jail. Officers from the Chicago Police Department pulled him over for failing to signal. When they approached the car, they smelled marijuana in the vehicle.

A search soon followed, and things went from bad to worse for Allen. The officers opened two backpacks and claimed to discover marijuana and a gun. The officers attributed the backpacks to Allen, and placed him under arrest. The officers let his passengers go.

The state charged Allen with several felonies, including drug and gun offenses. Allen spent a few days in custody. The charges were later dismissed. Months later, Allen was indicted, but the state eventually dropped the case.

Allen responded by filing suit against a group of officers, plus the City of Chicago. Defendants filed two motions to dismiss.

For the following reasons, the motions to dismiss are granted in part and denied in part.

**Background**

At the motion-to-dismiss stage, the Court must accept as true the well-pleaded allegations of the complaint. *See Lett v. City of Chicago*, 946 F.3d 398, 399 (7th Cir. 2020). The Court "offer[s] no opinion on the ultimate merits because further development of the record may cast the facts in a light different from the complaint." *Savory v. Cannon*, 947 F.3d 409, 412 (7th Cir. 2020).

On July 3, 2020, Mario Allen was out for an afternoon drive on Chicago's South Side. *See* Am. Cplt., at ¶ 16 (Dckt. No. 5). Allen was behind the wheel, rolling around town with three passengers. *Id.* at ¶ 18.

Things soon came to a halt. Officer Kevin Taylor and other unidentified officers of the Chicago Police Department stopped Allen for failing to signal. *Id.* at ¶ 16. When they approached the car, the officers "claimed to smell cannabis emanating from inside [Allen]'s vehicle." *Id.* at ¶ 17.

A search of the car soon followed. The complaint isn't entirely consistent about who, exactly, searched the car. At one point, the complaint alleges that Officer Taylor "and other officers" performed a search. *Id.* at ¶ 2. Later, the complaint says that Officer Taylor searched the car. *Id.* at ¶ 19. So, Officer Taylor searched the car, and maybe other officers pitched in too.

Officer Taylor recovered two backpacks containing "various pieces of contraband." *Id.* at ¶ 3; *see also id.* at ¶ 19.

The complaint does not come out and say what that "contraband" was. *Id.* But it comes close. The complaint alleges that Allen was later charged with possession of cannabis and a gun. *Id.* at ¶ 23. So a reasonable inference is that the officers found cannabis and a gun.

2

Officer Taylor attributed the ownership of the backpacks and their contents to Allen. *Id.* at ¶ 20. But according to Allen, Officer Taylor had "no evidence" to support the notion that they belonged to him. *Id.*

Officer Taylor arrested Allen, but let the passengers go. *Id.* at ¶ 21. Allen was charged with "several felony offenses" by the Cook County State's Attorney. *Id.* at ¶¶ 4–5. Allen remained in custody until July 6, 2020, when he posted bond. *Id.* at ¶ 25. So he spent three days in custody.

Seven months later, the charges were dismissed. *Id.* at ¶ 5. But not for long.

The State's Attorney convened a grand jury and indicted Allen in October 2021. The charges included "manufacture and delivery of cannabis and aggravated unlawful use of a weapon." *Id.* at ¶ 23. Officer Taylor testified before the grand jury, which "lead [sic] to the indictment." *Id.* at ¶ 24.

After the indictment, Allen spent another day in custody, before posting bond for the second time. *Id.* at ¶ 25.

The case lasted about a year and a half. All charges against Allen were dropped a second time on April 11, 2023. *Id.* at ¶ 26. Allen believes that the prosecution lacked evidence to charge him. *Id.* at ¶¶ 20, 23.

Allen also believes that the reason for the dismissal had a lot to do with the background of the officers at the traffic stop. Allen alleges that Officer Taylor is on the Cook County State's Attorney's "Do Not Call List." *Id.* at ¶ 29.

The "Do Not Call List" is a list of officers that prosecutors do not call to testify because the officers "themselves have faced criminal charges or accusations of other serious misconduct." *Id.* at ¶ 31. If prosecutors called those officers to testify at trial, they would have

3

to disclose the officers' misconduct (or allegations of misconduct) to defense counsel, which might sink their case. *Id.* at ¶ 30 (citing *Brady* and *Giglio*).

Allen asserts "on information and belief" that Officer Taylor's presence on the list is the "primary reason" that the State's Attorney dismissed the charges. *Id.* at ¶ 32.

According to the complaint, another Defendant, Officer Fair, is also on the "Do Not Call List." The complaint points to a report published by WGN News in March 2023. *Id.* at ¶ 33. Officer Fair allegedly was charged with a felony for obstruction of a criminal investigation and/or falsifying evidence. *Id.* at ¶¶ 35–36.

The complaint is murky when it comes to the role that Officer Fair allegedly played in Allen's arrest and prosecution. The complaint alleges that Defendants insisted on a prosecution despite "Officer Fair's lack of credibility." *Id.* at ¶ 45. But the complaint leaves the reader hanging. Officer Fair lacked credibility when he said what, when, and where? The complaint doesn't say what Officer Fair said, if anything.

The complaint includes statistics about other incidents of misconduct by CPD officers. It alleges that "the City of Chicago has failed to adopt policies or procedures" to prevent civil-rights violations. *Id.* at ¶¶ 37–42.

The complaint includes five counts.

Allen brings three federal claims under 42 U.S.C. § 1983. The first claim is a malicious-prosecution claim under the Fourth Amendment against Taylor and the City of Chicago (Count I). The second claim is an abuse-of-process claim against all Defendants (Count II). The third claim is a *Monell* claim against the City of Chicago (Count III), alleging that other officers failed to step in and prevent misconduct due to a "Code of Silence."

Allen also brings two state-law claims. He alleges intentional infliction of emotional distress by all Defendants (Count IV). And he brings an indemnification claim against the City of Chicago (Count V).

Defendants moved to dismiss the complaint. *See generally* Defs.' Mtn. to Dismiss (Dckt. No. 21); Def. City of Chicago's Mtn. to Dismiss (Dckt. No. 22).

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. *See* Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). When considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).

To survive a Rule 12(b)(6) motion, the complaint must provide the defendant with fair notice of the basis for the claim, and it must be facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 678.

## Analysis

The Court will begin with Allen's federal claims against the officers, before turning to the *Monell* claim against the City of Chicago. Then, the Court will turn to the state-law claims.

## I.      Malicious Prosecution (Count I)

The first claim is a federal claim of malicious prosecution against Officer Taylor and the City of Chicago. *See* Am. Cplt., at ¶¶ 43–49 (Dckt. No. 5).

A plaintiff can bring a malicious-prosecution claim under at least one, and possibly two, constitutional amendments. The Supreme Court has recognized a malicious-prosecution claim under the Fourth Amendment. *See Thompson v. Clark*, 596 U.S. 36, 39 (2022). The Supreme Court left open whether the Due Process Clause of the Fourteenth Amendment might give rise to a malicious-prosecution claim, too. *Id.* at 43 n.2 ("It has been argued that the Due Process Clause could be an appropriate analytical home for a malicious prosecution claim under § 1983. . . . But we have no occasion to consider such an argument here.") (citation omitted).

The Seventh Circuit has noted the uncertainty. "Whether the Fourteenth Amendment's procedural due process component ensures a right to be free from malicious prosecution is an open question." *See Jones v. York*, 34 F.4th 550, 564 n.8 (7th Cir. 2022) (citing *Thompson*, 596 U.S. at 43 n.2).

In any case, malicious prosecution under the Fourteenth Amendment is not at issue here. Allen does not invoke the Fourteenth Amendment, and he doesn't mention the Due Process Clause. *See generally* Am. Cplt. (Dckt. No. 5). The right to due process never came up in the complaint.

In contrast, Allen did cite the Fourth Amendment in the complaint, and he discussed probable cause at length in his response brief. *Id.* at ¶ 7; Pl.'s Resp. in Opp. to Mtn. to Dismiss, at 4–5 (Dckt. No. 28). So the Court will treat his claim as a malicious-prosecution claim under the Fourth Amendment.

The Supreme Court recognizes "a Fourth Amendment claim under § 1983 for malicious prosecution." *Evans v. Matson*, 2024 WL 2206638, at *2 (7th Cir. 2024) (citing *Thompson*, 596 U.S. at 42, 44). The claim is sometimes called "unreasonable seizure pursuant to legal process." *Id.* (quoting *Thompson*, 596 U.S. at 42); *see also Manuel v. City of Joliet*, 580 U.S. 357, 369

(2017) ("Our holding [is] that the Fourth Amendment governs a claim for unlawful pretrial detention even beyond the start of legal process.").

A malicious-prosecution claim under section 1983 "incorporat[es] into federal law the common-law tort of malicious prosecution as it existed in 1871, when § 1983 was enacted." *Dorsey v. City of Chicago*, 2025 WL 327425, at *8 (N.D. Ill. 2025) (citing *Thompson*, 596 U.S. at 42–43) (dismissing malicious-prosecution claims by a different plaintiff against Officers Taylor, Fair, and Morrow).

The Seventh Circuit recently elaborated on the requirements for a "Fourth Amendment claim under § 1983 for malicious prosecution." *Evans*, 2024 WL 2206638, at *2. The Seventh Circuit discussed three elements, after taking another requirement – the existence of a seizure – as a given.

Treating the existence of a seizure as a given makes sense. The *sine qua non* of a Fourth Amendment claim is the existence of a search or seizure, because the Fourth Amendment applies only to unreasonable searches and seizures. *See Thompson*, 596 U.S. at 43 n.2 ("Because this [malicious-prosecution] claim is housed in the Fourth Amendment, the plaintiff also has to prove that the malicious prosecution resulted in a seizure of the plaintiff.") (citing *Manuel*, 580 U.S. at 365–66).

If a seizure took place, then the plaintiff must prove three elements. "Provided that the conduct results in the plaintiff's 'seizure,' the [malicious-prosecution] claim arises if a criminal prosecution (1) was instituted without probable cause; (2) for a 'malicious' motive – a purpose other than bringing the defendant to justice; and (3) 'ended without a conviction.'" *Evans*, 2024 WL 2206638, at *2 (quoting *Thompson*, 596 U.S. at 44, 49).

Another recent Seventh Circuit case echoed the *Evans* three-part test. *See Lee v. Harris*, 127 F.4th 666, 676 (7th Cir. 2025). The Court of Appeals did not explicitly mention a requirement of "seizure," probably because it goes without saying. *Id.* at 675–76.

Here, Allen satisfies the requirement of a seizure. He was detained for three days after his initial arrest in July 2020, and was detained for another day after his indictment in October 2021. *See* Am. Cplt., at ¶ 25 (Dckt. No. 5).

When it comes to the three-part test, two of the three elements aren't at issue in the motion to dismiss. The parties do not discuss the second element, the existence of malice.[1] The third element, the "favorable termination" requirement, isn't up for grabs either. All charges against Allen were dismissed. *Id.* at ¶ 6. That's a favorable termination. *See Thompson*, 596 U.S. at 39 ("To demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under § 1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction.").

The only issue is the first element, meaning the existence of probable cause to charge Allen. To state a claim, Allen must allege a lack of probable cause.

Officer Taylor and the City argue that the complaint fails to allege a lack of probable cause. They argue that, if anything, the complaint alleges that they *did* have probable cause. Officer Taylor also argues that he is entitled to qualified immunity.

### A.    Probable Cause

The first question is whether the complaint alleges a lack of probable cause.

---

[1] As an aside, the Supreme Court in *Thompson* reserved the question "whether a plaintiff bringing a Fourth Amendment claim under § 1983 for malicious prosecution must establish malice (or some other *mens rea*) in addition to the absence of probable cause." *See Thompson*, 596 U.S. at 44. As the name suggests, the common-law tort of malicious prosecution *does* require malice. *Id.* at 60 (Alito, J., dissenting).

"Probable cause means that there are 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *United States v. Slone*, 636 F.3d 845, 849 (7th Cir. 2011) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)).

As applied to malicious prosecution, probable cause means "the existence of such facts and circumstances as would excite the belief, in a reasonable mind, acting on the facts within the knowledge of the prosecutor, that the person charged was guilty of the crime for which he was prosecuted." *Penn v. Chicago State Univ.*, 162 F. Supp. 2d 968, 976 (N.D. Ill. 2001), *aff'd sub nom. Penn v. Harris*, 296 F.3d 573 (7th Cir. 2002).

Probable cause is "a common-sense inquiry requiring only a probability of criminal activity . . . ." *Whitlock v. Brown*, 596 F.3d 406, 411 (7th Cir. 2010). A district court must assess probable cause "objectively," after considering "the conclusions that the arresting officer reasonably might have drawn from the information known to him." *Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 679 (7th Cir. 2007).

"Probable cause is a low bar." *Rainsberger v. Benner*, 913 F.3d 640, 649 (7th Cir. 2019) (Barrett, J.). Probable cause "requires only the 'kind of fair probability on which reasonable and prudent [people,] not legal technicians, act.'" *See Kaley v. United States*, 571 U.S. 320, 338 (2014) (Kagan, J.) (alterations in original) (quoting *Florida v. Harris*, 568 U.S. 237, 244 (2013)).

Against that backdrop, the Court considers the allegations in Allen's complaint. Reading the complaint liberally and drawing all reasonable inferences in his favor, Allen adequately alleges a lack of probable cause to charge him with possessing cannabis and a gun.

The gist of Allen's complaint is that the officers pulled him over, smelled cannabis coming from his car, searched the vehicle, and found two backpacks with unspecified "pieces of contraband." *See* Am. Cplt., at ¶¶ 3, 16–19 (Dckt. No. 5). Allen also alleges that Taylor "attributed the ownership of the backpacks and their contents to [Allen] with no evidence to support [Taylor's] assertion." *Id.* at ¶ 20. Taylor let the three passengers go, but arrested Allen. *Id.* at ¶ 21.

A few things aren't at issue. Allen doesn't allege that the police lacked a basis to pull him over. The legitimacy of the traffic stop isn't disputed.

Allen also does not allege that the police lacked a basis to perform a search. If anything, the complaint comes close to alleging the opposite. The complaint alleges that the police "claimed to smell cannabis emanating from inside Plaintiff's vehicle." *Id.* at ¶ 17.

The police have probable cause to perform a search of a vehicle when they smell marijuana. *See United States v. Jackson*, 103 F.4th 483, 488 (7th Cir. 2024) ("The smell of marijuana alone justifies a Fourth Amendment search or seizure.") (collecting cases); *United States v. Mosby*, 541 F.3d 764, 768 (7th Cir. 2008) ("The smell [of marijuana] alone was enough to give rise to probable cause to search the entire vehicle, including closed containers like the garbage bag."). A "plain sniff" rule applies – if the police smell marijuana, they can search the car.

That principle applies even in states like Illinois, which has "legalized marijuana for adult recreational use." *See Jackson*, 103 F.4th at 488. "The possession of marijuana is illegal under federal law." *Id.* Illinois, after all, is in America, and federal law applies in America. Federal law is the "supreme Law of the Land," including the Land of Lincoln. *See* U.S. Const. art. VI, cl. 2.

The ability to search a car flows naturally from the automobile exception. "Under the automobile exception to the Fourth Amendment's warrant requirement, officers may conduct 'a warrantless search of a vehicle . . . so long as there is probable cause to believe it contains contraband or evidence of illegal activity.'" *See United States v. Hays*, 90 F.4th 904, 907 (7th Cir. 2024) (citation omitted). "It is well settled that officers can search a car without a warrant where there is probable cause to believe that illegal substances are present." *Id.*; *see also Wyoming v. Houghton*, 526 U.S. 295, 300 (1999) (confirming that officers can conduct a warrantless search of a vehicle when they "had probable cause to believe there were illegal drugs in the car").

Allen does not challenge the search of the backpacks, either. "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *See United States v. Ross*, 456 U.S. 798, 825 (1982).

It doesn't matter who owned the backpacks. The police could search the backpacks, even if they belonged to one of the passengers. The ability to perform a search applies "broadly to *all* containers within a car, without qualification as to ownership." *See Houghton*, 526 U.S. at 301 (emphasis in original). That is, "police officers with probable cause to search a car may inspect passengers' belongings found in the car that are capable of concealing the object of the search." *Id.* at 307; *see also Hays*, 90 F.4th at 907 ("[O]fficers may search all containers within a car 'where they have probable cause to believe contraband or evidence is contained.' . . . This is true 'without qualification as to ownership' of the containers searched.") (citations omitted).

Once the police searched the backpacks for contraband, the discovery of contraband is fair game – even if the police found a different type of contraband than what they were looking

11

for. *See Hessel v. O'Hearn*, 977 F.2d 299, 302 (7th Cir. 1992) ("The 'plain view' doctrine . . . allows officers executing a valid search warrant to seize contraband or incriminating evidence that they see in the course of their search even though the items in question were not named in the warrant.").

So it doesn't matter if the police found a gun when they were looking for a marijuana. If a search is lawful, then anything found during that search is fair game. *See United States v. Cherry*, 920 F.3d 1126, 1137–38 (7th Cir. 2019) ("Under this plain view doctrine, a warrantless seizure is justified if first, the law enforcement officer did not violate the Fourth Amendment in arriving at the place from which evidence could be plainly viewed; second, the item was in plain view; and third, its incriminating character was immediately apparent."); *see also Coolidge v. New Hampshire*, 403 U.S. 443, 465 (1971).

The only issue is whether the officers had a basis to attribute the contraband in the backpacks to Allen. The amended complaint alleges that Officer Taylor "attributed the ownership of the backpacks and their contents to Plaintiff with no evidence to support his assertion." *See* Am. Cplt., at ¶ 20 (Dckt. No. 5).

That allegation might not age well. In fact, that allegation sits uncomfortably with the allegations of the original complaint.

The original complaint gave a reason why the officers thought that the backpacks belonged to Allen. The original complaint alleged that the two backpacks contained "various items of contraband [and] other items including a U.S. Bank receipt and insurance form with Plaintiff's name on them." *See* Cplt., at ¶ 19 (Dckt. No. 1). "As a result of the bank receipt and insurance form, Officer Kevin Taylor attributed the ownership of the backpacks to Plaintiff." *Id.* at ¶ 20.

Those details went mysteriously missing in the amended complaint. The amended complaint doesn't say anything about any documents in the backpacks.

So, the original complaint alleged that Officer Taylor attributed the backpacks to Allen because they included a bank receipt and an insurance form "with *Plaintiff's name* on them." *Id.* at ¶ 19 (emphasis added). But the amended complaint deleted that allegation, and then alleged the opposite. The amended complaint alleged that Officer Taylor had "no evidence" to attribute the backpacks to Allen. *See* Am. Cplt., at ¶ 20 (Dckt. No. 5).

It's hard to know what to make of that change.

Probable cause is a low bar. If the officers opened the backpacks and found documents with Allen's name on them, that's more than enough to support an inference that the backpacks belonged to Allen. The officers would have had probable cause to believe that Allen possessed the backpacks, and anything inside them.

The Federal Rules require a good-faith basis for alleging a fact in a complaint. *See* Fed. R. Civ. P. 11(b). And by implication, the Federal Rules should require a good-faith basis for removing a fact from a complaint. *See Lance v. Betty Shabazz Int'l Charter Sch.*, 2014 WL 340092, at *1 (N.D. Ill. 2014) (Dow, J.) (expressing skepticism when a plaintiff "delete[d] . . . bad facts that contributed to [the] [p]laintiff pleading himself out of court the first time"). Removing a bad-but-true fact from a complaint simply to avoid a motion to dismiss is not consistent with the truth-seeking function of litigation.

So the Court orders the following. One week after the date of this order, Allen's counsel must file a statement and must explain the removal of the allegation about the contents of the backpacks, meaning the sentence in the original complaint. Allen's counsel also must address whether the police found documents with Allen's name on them inside the backpacks. Maybe

13

the original complaint was mistaken, and the police didn't find any such documents in the backpacks. But if that's the case, then counsel must say so (and one wonders how such an allegation could have made its way into the original complaint by mistake).

In the meantime, the amended complaint is what matters. An amended complaint supersedes an earlier complaint. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 (7th Cir. 2004) ("It is axiomatic that an amended complaint supersedes an original complaint and renders the original complaint void."); *Lance*, 2014 WL 340092, at \*1 ("The Court's expectation was . . . not that Plaintiff would change (or delete) the bad facts that contributed to Plaintiff pleading himself out of court the first time. Nevertheless, the Court may consider only the first amended complaint."). The Seventh Circuit has frowned on looking at an earlier complaint when addressing a motion to dismiss a later complaint. *See Kelley v. Crosfield Catalysts*, 135 F.3d 1202, 1204 (7th Cir. 1998) ("[F]acts not incorporated into the amended pleading . . . cannot be considered by the court on a motion to dismiss the amended complaint. A court cannot resuscitate these facts when assessing whether the amended complaint states a viable claim.").

The operative complaint alleges that Officer Taylor had no reason to believe that the backpacks belonged to Allen. For now, that allegation is enough to survive a motion to dismiss. Whether the police had probable cause to attribute the backpacks to Allen is a fact-specific enterprise, and the amended complaint doesn't give much to go on.

The Supreme Court encountered a similar situation in *Maryland v. Pringle*, 540 U.S. 366 (2003). There, a police officer pulled over a car with three occupants at 3:16 a.m., and discovered $763 in rolled-up cash and five baggies of cocaine. The cocaine was "behind the back-seat armrest and accessible to all three men." *Id.* at 368. But all of them denied ownership.

14

The Supreme Court found probable cause to arrest the driver. "We think it an entirely reasonable inference from these facts that any or all three of the occupants had knowledge of, and exercised dominion and control over, the cocaine. Thus, a reasonable officer could conclude that there was probable cause to believe Pringle committed the crime of possession of cocaine, either solely or jointly." *Id.* at 372; *see also id.* at 373 ("[A] car passenger . . . will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or the evidence of their wrongdoing.") (quoting *Houghton*, 526 U.S. at 304–05); *see also Young v. City of Chicago*, 987 F.3d 641, 644 (7th Cir. 2021) (finding probable cause when officers "found a gun *right next to* [the suspect] in the car he was driving," even though the driver said that the gun belonged to the passenger) (emphasis added).

Maybe the same conclusion will apply here, but it's hard to say without knowing the facts. The complaint does not allege where the backpacks were located. The facts could reveal other reasons to think that the backpacks belonged to Allen, or other reasons to conclude that they belonged to someone else.

For example, imagine if the bag in question was a purse that a woman was wearing around her neck in the backseat. *See, e.g.*, *United States v. Eymann*, 962 F.3d 273, 287 (7th Cir. 2020) (finding a lack of probable cause to arrest a driver on marijuana charges when another passenger readily admitted to ownership of the marijuana in the car). In that situation, there might be good reason to think that the bag didn't belong to Allen. It's hard to say in the abstract.

For now, the claim survives. It might not be long for this world, but for now, it lives to see another day.

B.      **Qualified Immunity**

Taylor and the City of Chicago also move to dismiss the malicious-prosecution claim based on qualified immunity.

Qualified immunity protects public officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To overcome qualified immunity, a plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow*, 457 U.S. at 818).

Qualified immunity and a motion to dismiss sometimes make an odd couple. *See generally Costa v. Ramaiah*, 689 F. Supp. 3d 553, 577 (N.D. Ill. 2023) (discussing the tension that arises when a defendant moves to dismiss based on qualified immunity).

After all, qualified immunity is an affirmative defense. *See Smith v. Finkley*, 10 F.4th 725, 737 (7th Cir. 2022). And "moving for judgment on the pleadings under Rule 12(c) is the more appropriate way to address an affirmative defense." *See Calchi v. TopCo Assocs., LLC*, 2024 WL 4346420, at *5 n.2 (N.D. Ill. 2024) (quoting *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 645 (7th Cir. 2019)). A motion to dismiss under Rule 12(b)(6) is not the preferred way to raise qualified immunity.

But that's not the only reason why a motion to dismiss and qualified immunity are an odd fit. Qualified immunity is a fact-intensive analysis. And "[b]ecause a qualified immunity defense so closely depends on the facts of the case, a complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds." *Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018). The fact-gathering comes later, during discovery.

16

At the pleading stage, a plaintiff "need not include every detail or fact related to the basis of her allegations." *Id.* Instead, a plaintiff needs to plead "only enough facts to state a claim to relief that is plausible on its face." *See Twombly*, 550 U.S. at 570.

"That plausibility standard creates tension at this stage of litigation between developing the requisite facts for a well-informed qualified immunity determination and preserving a government official's right to avoid the burdens of pretrial matters, including discovery." *See Reed*, 906 F.3d at 548.

So qualified immunity is "*sometimes* a factual question better reserved for summary judgment." *See Ewell v. Toney*, 853 F.3d 911, 920 (7th Cir. 2017) (emphasis added); *see also Jacobs v. City of Chicago*, 215 F.3d 758, 775 (7th Cir. 2000) (Easterbrook, J., concurring in part and concurring in the judgment) ("Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground of dismissal."); *Reed*, 906 F.3d at 549 (collecting cases).

Another layer of tension comes from the nature of a plaintiff's burden. On the one hand, once a defendant raises qualified immunity, "the plaintiff carries the burden of showing that defendants are not immune." *See Sebesta v. Davis*, 878 F.3d 226, 233 (7th Cir. 2017) (citing *Archer v. Chisholm*, 870 F.3d 603, 613 (7th Cir. 2017)).

On the other hand, a complaint doesn't need to "anticipate and overcome" a qualified-immunity defense at the motion-to-dismiss stage. *See Roldan v. Stroud*, 52 F.4th 335, 339 (7th Cir. 2022) (quoting *Jacobs*, 215 F.3d at 765 n.3). A plaintiff simply needs to "include enough facts to present 'a story that holds together.'" *Id.* (quoting *Reed*, 906 F.3d at 548).

So a plaintiff has the burden of overcoming an assertion of qualified immunity. But a complaint doesn't have to allege the absence of qualified immunity, either.

17

In the end, it is sometimes possible to succeed on a qualified-immunity defense at the motion-to-dismiss stage. "Simply put, a plaintiff can plead himself out of court on qualified immunity grounds." *See Sabo v. Erickson*, 128 F.4th 836, 842 (7th Cir. 2025) (en banc) (collecting cases). Everyone can trip over their own two feet. And a complaint can always show itself the door.

Dismissal is appropriate if the complaint itself shows the existence of qualified immunity. *See Hanson v. LeVan*, 967 F.3d 584, 591 (7th Cir. 2020) (recognizing that a district court can dismiss a complaint based on qualified immunity "if the allegations in the complaint fail to state a claim of a clearly established right having been violated").

Putting it all together, a complaint will overcome a motion to dismiss based on qualified immunity when "(1) the plaintiff[] adequately alleged facts that, if true, would constitute a violation of a statutory or constitutional right, and (2) the right was 'clearly established' at the time of the alleged violation, such that a reasonable public official would have known his conduct was unlawful." *Id.* at 592.

The first requirement is a violation of a federal right. Again, Allen has adequately alleged a malicious-prosecution claim under the Fourth Amendment.

The second requirement is a violation of a "clearly established right." *See Pryor v. Corrigan*, 124 F.4th 475, 488 (7th Cir. 2024); *see also Archer*, 870 F.3d at 613. To make that showing, the plaintiff must "show[] that there is a case 'on point or closely analogous' that allows [the Court] to conclude that a reasonable government employee would or should know that her conduct is unlawful." *See Sebesta*, 878 F.3d at 234 (quoting *Boyd v. Owen*, 481 F.3d 520, 527 (7th Cir. 2007)).

18

The Supreme Court has emphasized that the "'clearly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, 580 U.S. 73, 79 (2017) (quoting *Al-Kidd*, 563 U.S. at 742). Instead, the formulation of the clearly established right "must be 'particularized' to the facts of the case." *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Even at the motion-to-dismiss stage, "the crucial question" is "whether the official acted reasonably *in the particular circumstances* that he or she faced." *See Sabo*, 128 F.4th at 844 (emphasis added) (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014)).

However, at the motion-to-dismiss stage, "[a]sserting a qualified immunity defense . . . subjects the defendant to a more challenging standard of review than would apply on summary judgment." *See Reed*, 906 F.3d at 549 (citation omitted). That's because "it is the defendant's conduct *as alleged in the complaint* that is scrutinized for 'objective legal reasonableness.'" *Id.* (emphasis in original) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)).

As a result, courts focus less on whether the plaintiff has pleaded a right with factual precision. Courts focus more on whether the plaintiff has pleaded facts that present "a story that holds together." *See Roldan*, 52 F.4th at 339 (quoting *Reed*, 906 F.3d at 548). That is, courts look for a story that plausibly suggests the violation of a clearly established right.

In other words, even though the clearly established right needs to be specific, the complaint does not need heightened specificity. After all, Rule 8, not Rule 9, governs complaints, even when a defendant asserts qualified immunity. And Rule 8 requires only a "short and plain statement of the claim." *See* Fed. R. Civ. P. 8(a)(2).

The parties can add details later, including pinning down the exact parameters of the clearly established right. *See Roldan*, 52 F.4th at 340 ("At the dismissal stage, however, we

19

cannot draw an inference against [the plaintiff] or somehow hold him to a pleading standard beyond Rule 8 just because the defendants invoked qualified immunity as a defense."). "If the question turns on the facts, the issue of qualified immunity is best left for a later day." *Costa*, 689 F. Supp. 3d at 577.

At the motion-to-dismiss stage, courts in this district have not required much specificity about the clearly established right. For example, another court in this district held that "it has been clearly established that it was unconstitutional for the [defendants] to continue to detain [the plaintiff] without probable cause and based on a falsified arrest report." *Alcorn v. City of Chicago*, 2018 WL 3614010, at *9 (N.D. Ill. 2018) (Kendall, J.); *see also Lankamer v. Lalley*, 2024 WL 4119152, at *6 (N.D. Ill. 2024) (holding that the complaint alleged a clearly established right by "alleging that [the decedent] had a Fourth Amendment right to medical attention in response to a serious medical condition"); *Washington v. Bd. of Educ.*, 2021 WL 5881682, at *10 (N.D. Ill. 2021) (denying a motion to dismiss when the complaint "sufficiently allege[d] that [the defendants] violated [the] clearly established right to be free from discrimination based on his gender"); *Gupta v. Owens*, 2014 WL 1031471, at *3 (N.D. Ill. 2014) (denying a motion to dismiss because the plaintiff "had a clearly established right to be free from arrest without probable cause" and "a reasonable person in [the defendant]'s position would have known that probable cause was required to make an arrest").

After all, "an immunity defense usually depends on the facts of the case," so the plaintiffs in each case had met their burden to *allege* a clearly established right at the pleading stage. *See Doe v. Village of Arlington Heights*, 782 F.3d 911, 916 (7th Cir. 2015) (quoting *Alvarado*, 267 F.3d at 651).

20

True, the existence of a clearly established right is a legal question, not a factual question. But pinning down the legal question depends on the facts. After all, a district court might need to know the facts – the actual conduct alleged to be unlawful – to know whether a case is "on point or closely analogous." *See Sebesta*, 878 F.3d at 234.

Allen satisfies this standard. He alleges that the officers violated his "right not to be maliciously prosecuted." *See* Pl.'s Resp., at 5 (Dckt. No. 28). In his view, *Manuel* recognized the existence of that right, well before Allen got pulled over. *Id.*

The Supreme Court did not explicitly formulate the right in *Manuel* as a right to be free from malicious prosecution. *Id.* But the Supreme Court did state that the "Fourth Amendment prohibits government officials from detaining a person in the absence of probable cause." *See Manuel*, 580 U.S. at 367–68. So the plaintiff in *Manuel* "stated a Fourth Amendment claim when he sought relief not merely for his (pre-legal-process) arrest, but also for his (post-legal-process) pretrial detention." *Id.*

The officers attempt to reframe the right by posing a narrow question: "does a police officer have probable cause to believe a driver of a vehicle actually or constructively possesses contraband that is recovered from two backpacks inside his vehicle?" *See* Defs.' Mtn. to Dismiss, at 10 (Dckt. No. 21). As the officers see it, the clear answer is yes, so they violated no clearly established right. *Id.*

But that question speaks to whether there was a violation at all, not whether the right was clearly established. That is, that question is about the first prong of the qualified-immunity analysis (*i.e.*, the existence of a violation), not the second prong (*i.e.*, the existence of a clearly established right).

21

"Simply put, whether [Officer-Defendants] had probable cause to [detain Allen] requires more discovery, as does the question of their entitlement to qualified immunity." *Green*, 2024 WL 1363543, at *5 (N.D. Ill. 2024); *see also id.* at *6 ("Simply put, there are too many factual questions regarding probable cause to grant qualified immunity on a motion to dismiss.").

At this stage, Allen has adequately alleged his malicious-prosecution claim. For now, the officers cannot avail themselves of qualified immunity because Allen has identified a clearly established right to be free from unlawful custody as part of a prosecution.

At this point, a reader could be forgiven for thinking that the discussion of qualified immunity contains a bunch of legalese. So, the Court will sum it up in plain English. It's too early to say what happened during the traffic stop. The facts are up in the air. So it's too early to say whether the officers violated a clearly established right.

In sum, the malicious-prosecution claim against Officer Taylor (Count I) survives.

Allen also brings a malicious-prosecution claim against the City of Chicago. *See* Am. Cplt., at ¶¶ 43–49 (Dckt. No. 5). But a municipality is not a proper defendant under section 1983 except through a *Monell* claim. *See Bradley v. Village of University Park*, 929 F.3d 875, 884 (7th Cir. 2019) ("Local governments are liable for damages under § 1983 only for violations of federal rights that occur 'pursuant to official municipal policy of some nature.'") (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). So the Court dismisses the malicious-prosecution claim (Count I) against the City of Chicago.

## II.     Abuse of Process (Count II)

Allen also brings an abuse-of-process claim under section 1983. *See* Am. Cplt., at ¶¶ 50–54 (Dckt. No. 5).

22

The parties disagree about whether a plaintiff can bring an abuse-of-process claim under section 1983. Defendants contend that Seventh Circuit case law does not permit a federal abuse-of-process claim when there is an adequate state remedy. *See* Defs.' Mtn. to Dismiss, at 11 (Dckt. No. 21); *see also Adams v. Rotkvich*, 325 F. App'x 450, 453 (7th Cir. 2009) ("[A]buse of process is not a free-standing constitutional tort if state law provides a remedy for abuse of process. Illinois provides such a remedy. Accordingly, [a] claim for abuse of process [is] not cognizable under § 1983."). On the other side, Allen believes that *Adams* is no longer good law. *See* Pl.'s Resp., at 6 (Dckt. No. 28).

This Court does not need to get into whether *Adams* remains good law. The complaint does not state a claim, even if a federal abuse-of-process claim is theoretically viable.

An abuse-of-process claim under section 1983 has the same elements as an abuse-of-process claim under state law. *See Hart v. Mannina*, 798 F.3d 578, 593 (7th Cir. 2015) ("Assuming abuse of process is cognizable under § 1983, we would look to state law to determine the elements of the claim."). The "only elements necessary to plead a cause of action for abuse of process under Illinois law are (1) the existence of an ulterior purpose or motive and (2) some act in the use of legal process not proper in the regular prosecution of the proceedings." *Pace v. Timmermann's Ranch & Saddle Shop Inc.*, 795 F.3d 748, 757 (7th Cir. 2015).

Allen's complaint does not allege any facts that could give rise to a plausible claim. The complaint does not allege anything about an ulterior purpose or motive. The complaint does not allege any improper act, either.

At best, the complaint alleges that Officer Taylor attributed the backpacks to Allen, without a factual basis for doing so. That's not enough to state a claim for abuse of process.

Allen also brought the abuse-of-process claim against Officers Fair, Morrow, and Rodriguez. The complaint alleges even less about them than it does about Officer Taylor. The complaint does not come close to alleging any facts that could give rise to an abuse-of-process claim against them. The complaint does not allege a violation, let alone that they had personal involvement in any violation. *See Gonzalez v. McHenry Cnty.*, 40 F.4th 824, 828 (7th Cir. 2022).

The abuse-of-process claim (Count II) is dismissed.

## III.    Section 1983 – *Monell* Claim (Count III)

The next claim is a *Monell* claim against the City of Chicago.

A *Monell* claim allows a plaintiff to hold a municipality liable under section 1983 for "conduct that is properly attributable to the municipality itself." *First Midwest Bank v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021) (citing *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403–04 (1997)).

To bring a *Monell* claim, a plaintiff must allege the existence of "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Id.* (quoting *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019)).

Allen had three different paths to choose from. But he didn't pick a lane.

The complaint alleges almost no facts about the *Monell* claim. The complaint alleges that "four officers" in the Fifth District "terrorized the southside of Chicago." *See* Am. Cplt., at ¶ 56 (Dckt. No. 5). And then, the complaint alleges that no officers stepped in to prevent the "egregious behavior" because of a "Code of Silence." *Id.* at ¶ 57.

24

That's it.  And that's not enough.  A complaint does not state a *Monell* claim by using the catch-phrase "Code of Silence."  A claim must rest on facts, not buzzwords.  *See Slabon v. Sanchez*, 2020 WL 5763760, at *1 (N.D. Ill. 2020) ("The Court does not need to accept conclusions, boilerplate, buzzwords, or legalese.  Mouthing the magic words adds air, but no weight.").

Allen does not muster a defense of the *Monell* claim in his response brief.  In fact, Allen did not address the *Monell* claim at all.  *See* Pl.'s Resp. (Dckt. No. 28).  So any argument is waived.

"A litigant 'waives an argument by failing to make it before the district court.'  This rule applies when 'a party fails to develop arguments related to a discrete issue' and also when he 'effectively abandons' the issue 'by not responding to alleged deficiencies in a motion to dismiss.'"  *Braun v. Village of Palatine*, 56 F.4th 542, 553 (7th Cir. 2022) (quoting *Alioto v. Town of Lisbon*, 651 F.3d 715, 720–21 (7th Cir. 2011)), *reh'g denied*, 2023 WL 2188741 (7th Cir. 2023).

The waiver didn't stop with the *Monell* claim.  In fact, Allen didn't file any response to the City's motion to dismiss.  That is, Allen responded to the motion to dismiss filed by the Officer-Defendants, but did not file a response to the City's motion to dismiss.  *See generally* Pl.'s Resp. (Dckt. No. 28); *see also* Def. City of Chicago's Reply, at 2–3 (Dckt. No. 29).

When it comes to the City's motion to dismiss, Allen had nothing to say.  So everything is waived.  *See Lekas v. Briley*, 405 F.3d 602, 614 (7th Cir. 2005).

The *Monell* claim (Count III) is dismissed.

**IV.    Intentional Infliction of Emotional Distress (Count IV)**

The next claim is intentional infliction of emotional distress.  Allen runs into similar problems.

A claim of intentional infliction of emotional distress requires "(1) extreme and outrageous conduct; (2) intent or knowledge by the actor that there is at least a high probability that his or her conduct would inflict severe emotional distress and reckless disregard of that probability; and (3) severe and emotional distress."  *Adams v. Sussman & Hertzberg, Ltd.*, 684 N.E.2d 935, 941 (Ill. App. Ct. 1997).  The conduct must be so extreme, so outrageous, and "so severe that no reasonable man could be expected to endure it."  *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988).

Here, the complaint marches through the elements, but offers nothing else.  The complaint alleges that the "acts and conduct of Defendant Officer Kevin Taylor and his fellow officers were extreme and outrageous."  *See* Am. Cplt., at ¶ 60 (Dckt. No. 5).  That's a conclusion, and conclusory allegations carry no weight.  *See Bronson v. Ann & Robert H. Lurie Children's Hosp. of Chicago*, 69 F.4th 437, 448 (7th Cir. 2023) ("[L]egal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to [the] presumption of truth.").

The complaint does not allege any conduct by Officer Taylor, except searching the vehicle and attributing the contents of the backpacks to Allen.  Maybe Officer Taylor made a mistake in doing so.  But a mistake is not enough to give rise to a claim for an intentional tort.

The complaint also alleges that Officer Taylor testified before the grand jury, and that his testimony led to the indictment.  *See* Am. Cplt., at ¶ 24 (Dckt. No. 5).  Maybe so.  But that allegation isn't enough to give rise to a claim, either.

26

If there are any facts that could support a claim, the complaint doesn't allege them. In his brief, Allen tries to come to the rescue of the claim. But he doesn't save it.

By the look of things, Allen's brief attempts to expand the allegations of the complaint. Allen argues that a "police officer giving false testimony at a grand jury, and the conduct of defendant Fine [sic] in allegedly planting guns on citizens, is [sic] precisely the kind of extreme and outrageous conduct that the law prohibits . . . ." *See* Pl.'s Resp., at 6 (Dckt. No. 28).

That argument comes out of nowhere. The complaint does not allege that any officer gave false testimony to the grand jury, let alone reveal what it was.

The complaint also does not allege anything about anyone planting a gun in Allen's car, including the backpacks. In fact, the complaint does not even squarely allege that the officers found a gun (except by inference, based on the criminal charge of gun possession). The complaint refers obliquely to "various pieces of contraband," and then leaves it to the reader to connect the dots. *See* Am. Cplt., at ¶ 3 (Dckt. No. 5).

True, Allen alleges that Officer Fair "was under investigation for destroying evidence and planting guns on unsuspecting citizens in order to charge them with false allegations far before the arrest of Plaintiff in this case." *Id.* at ¶ 36. But the complaint is not about "unsuspecting citizens" generally. The complaint is about Allen, and the complaint does not allege that Officer Fair planted a gun in Allen's car.

The claim of intentional infliction of emotional distress (Count IV) is dismissed.

## V.    **Indemnification (Count V)**

The last claim is an indemnification claim against only the City of Chicago. *See* Am. Cplt., at ¶¶ 67–69 (Dckt. No. 5).

27

An indemnification claim presupposes that some other claim will survive. That is, an indemnification claim assumes that there is something to indemnify a party *for*.

The City moved to dismiss the indemnification claim if the Officer-Defendants ran the table on their motion to dismiss. *See* Def. City of Chicago's Mtn. to Dismiss, at 12 (Dckt. No. 22) ("Should the Court find the Defendant Officers' Motion is well-taken *across the board*, the City respectfully requests the indemnification claim against it be dismissed as well.") (emphasis added).

As explained above, the malicious-prosecution claim against Officer Taylor survives. So, to that limited extent, the indemnification claim survives too. The indemnification claim is otherwise dismissed.

### Conclusion

For the foregoing reasons, the Officer-Defendants' motion to dismiss (Dckt. No. 21) is hereby granted in part and denied in part, and the City of Chicago's motion to dismiss (Dckt. No. 22) is hereby granted in part and denied in part. The malicious-prosecution claim against Officer Taylor (Count I) survives, and so does the indemnification claim against the City (Count V) to that limited extent. The amended complaint is otherwise dismissed.

Date: March 21, 2025

Steven C. Seeger
United States District Judge